JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Rachel Jones

**DEFENDANTS**

Pennsylvania State Police
Craig Acord
Mike Tinneny

**(b)** County of Residence of First Listed Plaintiff   Bucks
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Bucks
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Alexis I. Lehmann
Law Office/Brian M. Puricelli
2721 Pickertown Rd.
Warrington PA 18976
215-584-5116

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 2000e

Brief description of cause:
State Trooper Jones discriminated against by supervisors

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   8/3/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1451 Neshammy Valley Drive, Bensalem PA 19020

Address of Defendant: PSP 1800 Elmerton Ave. Harrisburg PA 17110

Place of Accident, Incident or Transaction: Bucks County

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
   6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Alexis Lehmann , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 8/3/2016   Alexis Lehmann   308423

Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/3/2016   _____   308423

Attorney-at-Law   Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Rachel JONES     :    CIVIL ACTION

    v.       :

PSP         :
Craig Accord      :    NO.
Mike Finney

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court.  (See reverse side of this form for a detailed explanation of special
  management cases.)              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 8/3/2016 | Alexis I. Lehmann | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-504-8116 | 215-504-2639 | zafferesa@puricellilaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RACHEL JONES** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | JURY DEMAND |
| | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA STATE POLICE,** | : | |
| **CRAIG ACORD,** | : | |
| **MIKE TINNENY** | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

**I.    INTRODUCTION**

1.    Plaintiff brings this civil action seeking all relief provided under the law including but not limited to compensatory, consequential, nominal, and punitive damages, reasonable attorney fees, litigation costs, and equitable relief including injunctive and declaratory relief such as but not limited to the declaration of an unconstitutional, void and invalid policy, procedure or conduct.

2.    The relief sought is provided under Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e, et seq.), the comparable state law, Pennsylvania Human Relations Act (43 P.S.§ 951-963 et seq.), for the denial of equal protection and treatment in employment terms and conditions because of Plaintiff's race and/or sex, for creating a hostile work environment, and for retaliation for opposing perceived discrimination, hostile work environment or other actions believed to be illegal.

3.    As is more fully set forth below, *Defendant Tinneny* as supervisor for the PSP created a policy for the Pennsylvania State Police and acted both as aider and abettor of that policy to discriminate against subordinate employees based on sex and/or race; to create a

1

hostile work environment and/or to retaliate against subordinate employee**s** for opposing perceived actions to be illegal.

4.      The Defendant(s) at all times related to the claims knew or were on notice that their conduct would result or likely result in a deprivation of employment rights, and that their conduct would subject them to liability under Title VII (42 U.S.C. §2000(e) et seq.); the comparable Pennsylvania Human Relations Act (43 P.S.. § 951-963 et seq.).

## II.      JURISDICTION / VENUE

5.      Jurisdiction for the District Court to hear this action is afforded to the District Court pursuant to 28 U.S.C. § 1331 (Federal Question), 42 USC §1983 and Title VII (42 U.S.C. 2000e et seq.), and 28 U.S.C. § 1343 (3) and (4) (Civil Rights).

6.      Venue properly lies in the United States District Court for the Eastern District of Pennsylvania because the cause of action herein pleaded occurred in Bucks County  which is located in the venue established for the District Court for the Eastern District of Pennsylvania. Plaintiff's invoke supplemental jurisdiction under 28 U.S.C. § 1367 so the District Court can resolve the state pendent and related claims.

## III.     THE PARTIES

7.      RACHEL JONES (herein after Plaintiff) is a resident of and has domicile in the County of Bucks, Pennsylvania; she is a governmental employee as intended under Title VII (42 U.S.C. § 2000(e)) and the PHRA.

8.      SGT. MIKE TINNENY, (herein after Tinneny) is a resident of and has domicile in that jurisdiction which is within the Third Circuit; he is a supervisor with control and authority over the Plaintiff in his terms and conditions of employment with the PSP as identified in Title VII (42 U.S.C. § 2000e et seq.)and the PHRA (not a co-worker); and an individual person/employee as defined under 42 USC 1983 and the PHRA.

2

9.      Trooper CRAIG ACORD, (herein after Acord) is a resident of and has domicile in that jurisdiction which is within the Third Circuit; he is a co-worker, of the same rank as Plaintiff, to invoke vicarious liability on the employee under the PHRA and Title VII, and is an individual person/employee as defined under 42 USC 1983 and the PHRA.

10.     PENNSYLVANIA STATE POLICE, (herein after Defendant, PSP) is a municipal entity that exists and acts only pursuant to state law; it is an employer as intended under Title VII (42 U.S.C. § 2000e et seq.), and the PHRA and employs over 500 people.

## IV.   <u>FACTS</u>

11.     Plaintiff was hired by the PSP on May 9, 2011.  She was assigned to Troop M which covers highway 95 and also assists with local boroughs.   For all relevant times Plaintiff was assigned to the alternating 7x3 and 3x11 shift.

12.     Plaintiff and Defendant, Trooper Acord, were in a romantic relationship from 2013 to June 2014.  After this terminated Acord persisted to get back together with Plaintiff, to which she declined.

13.     Continuing from a few days after the relationship ended until the PFA was signed off by a judge, Acord would harass Plaintiff by **sending text messages asking where she was and what she was doing, parking outside her residence, buying her gifts, sent gifts to her personal residence, left food in her work mailbox, take pictures of her with him cell phone....etc.** Plaintiff asked him to stop on multiple occasions. (These actions are more fully described in Plaintiff's EEO complaint made to the PSP and attached hereto as Exhibit A)

14.     Beginning in 2015 Plaintiff altered her work routine to avoid contact with Acord. She would hand in paperwork in the middle of her shift as oppose to the beginning before heading out on the road. This took time out of her patrol work.  Also, during the overlap of shifts, if they were alone in the patrol room, she would exit the room with unfinished work.

15.     In April 2015 **Plaintiff was scheduled to go to the shooting range when  Acord was the range instructor.**  Plaintiff expressed to Cpl. Mills that she was uncomfortable going to the range while Acord was there and asked to switch times with another trooper.   This was granted.

16.     On May 9, 2015 Plaintiff and Acord had overlapping shifts and Acord approached her in the patrol room.  Acord asked her why they were not going together to the shooting range that day, **then stood up behind her and gave her a kiss on the neck**, then ran out of the room. This touching was unwelcomed physical contact.

17.     On June 10, 2015 Plaintiff and Acord's shift overlapped again.   He again approached her and while standing only a few feet away **took an inappropriate picture of himself with her** in the background.

18.     On June 11, 2015 Plaintiff made her first official complaint to Cpl. RAI.  Cpl. Rai called Plaintiff on phone about the incident which occurred on May 9th 2015 (kiss in patrol room), and the picture.

19.     Plaintiff then received an off duty call from <u>Sgt. Tinneny</u> and asked her to meet him in "Target" parking lot and to turn off her patrol vehicle computer.   She informed him about the kissing incident on May 9, 2015, and that she blocked Acord's phone number because he would not leave her alone, among other harassing events.   She also explained about the pictures that Acord would take of her when she was in the district. Tinneny said he will take care of it and report to appropriate people. **Tinneny did *not* advise her to report to the EEO unit.**

20.     Lt. Sokolofski at Bethlehem station, then contacted Plaintiff, and asked her about Acord's behavior; if "trooper Acord's actions were harassing or sexually harassing".  Plaintiff repeated the events between her and Acord.  Lt. Sokolofski did *not* advise her to take any additional actions or report to the EEO unit.

21.     On June 15, 2015 Lt. Sokolofski called again and said Trooper Acord had been advised not to have contact with Plaintiff unless for a work related matter. Plaintiff responded she was still concerned during change of shifts. He responded by telling her to report back to him if she had any problems, but **"there was no need for an investigation at that time"**.

22.     During this time at Camp Cadet, Capt. Brian Tobin (Troop M - Trevose captain) came to the station and said Acord's behavior was unacceptable and something was drawn up for Acord to sign (assuming Supervisor Notation).   Capt. Tobin advised Plaintiff that Acord was instructed not to have any contact with her except for work. She expressed continued concerns and he said to "let him know".

23.     June 20th 2015 was the first day back from cadet camp.

24.     On June 23, 2015 Cpl. Mills told Plaintiff that they are going to "change her shift around".   The same day Plaintiff talked to Capt. Windel Morris, director of EEO in Harrisburg, regarding Acord and Tinneny and asked why they are not changing *Acord's* schedule but instead changing hers.  Morris said to "be professional" but her complaints were not taken seriously.

25.     On July 4, 2015 the troop, including Plaintiff and Acord, were offered overtime; which created the possibility of working together.  Plaintiff was concerned and expressed that to Cpl. Mills.  Sgt. Tinneny told the corporals that they could no longer talk to her about her and Acord's situation.   Plaintiff called Sgt. Tinneny, who had an annoyed tone, and said "you'll be fine", and disregarded her concerns.

26.     On July 13, 2015, she was scheduled to work with Acord again.  Plaintiff contacted Cpl. Rai to change her schedule, but he informed her that he had to talk to Sgt. Tinneny.   The shifts were not changed.

27.     **Plaintiff remained on the 7axp and 3px11p shifts, and occasionally worked at the same time as Acord; Sgt. Tinneny claims he was trying to accommodate, but Acord could have easily been moved to a different platoon, as the alleged harasser.**

28.     Soon after that, Sgt. Tinneny said he was "washing his hands of this situation".

29.     Plaintiff believes and therefore avers that her supervisors, including but not limited to Sgt. Tinnony, failed to take prompt and/or appropriate action remedy the situation.

30.     On July 14, 2015 she made a formal complaint and was interviewed by an EEO investigator of the PSP regarding Accor's harassment and her other complaints of physical and non physical contact. This investigation was ultimately unsustained.

31.     August 26, 2015 Plaintiff then filed a charge with the federal EEOC. Only after this charge was filed, did internal affairs conduct any witness interviews for their investigation. The Right-to-Sue letter was issued on May 4, 2016 and received in the mail on May 11, 2016.

32.     On multiple occasions in September 2015, **Acord would show up to the Trevose station hours prior to his shift** starting and find Plaintiff in the building for no reason.

33.     Acord would also send her **gifts**, sit unusually close to her in the patrol room, and try and take **pictures** of her.

34.     In November 2015 Plaintiff witnessed Acord **parked in her neighborhood** in a patrol vehicle, which is not his patrol area. There was no legitimate reason for Acord being in Plaintiff's neighborhood while on duty. She immediately notified Sgt. Tinneny who changed her schedule on certain days to avoid contact and he notified IAD; an investigation ensued.

35.     **Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.** To receive the "PFA" Plaintiff has had to miss multiple days of scheduled duty for court appearances. *A temporary* "PFA" was issued on December 21, 2015.

36.     Only after the IAD was initiated and after the PFA was filed, in November 2015, Acord was moved to the Dublin station, but still assigned to troop M.  Prior to that, he was still going to the Trevose station for court and would purposely show up on Plaintiff's shifts.

37.     On January 20, 2016 Sgt. McShea attended a court hearing for the "PFA" and was introduced as a witness, but was only supposed to be observing the hearing. Plaintiff's attorney requested a continuance to February 24, 2016.

38.     In February 2016 Plaintiff was denied access to her internal affairs interviews and the outcome of the investigation. This was in violation of PSP rules and regulations 4-25.

39.     Plaintiff then found a message from trooper Acord sent over the "MDT" system; previously however, Sgt. McShea told her that he could not find any messages from trooper Acord sent to her over the "MDT".

40.     In February 2016 Plaintiff personally noticed and was verbally verified by Cpl. Nacois that Acord was still on the Trevose work schedule for the 7x3 shift.

41.     On February 24, 2016 the "PFA" hearing was continued for a third time for a special listing, scheduled for May 9, 2016.

**42.     On March 22, 2016 Sgt. Tinneny called Plaintiff into his office and handed her the determination from the *second* internal affairs investigation; it was "unsustained". This allowed Acord to return to Trevose station.**

43.     On March 24, 2016 Plaintiff was informed by Sgt. Tinneny that Acord had put in a permanent transfer request for Dublin station.

44.     To date Acord's name still appears on the Trevose station daily schedule and often on the same shift as Plaintiff.

45.     On May 9, 2016 there was a PFA hearing, and the Judge ruled in Plaintiff's favor issuing a 2 year PFA.

46.     On May 21, 2016 Plaintiff was interviewed by internal affairs in regards to the PFA which was recently issued on May 9th.   Plaintiff was not told why and IAD investigation was ongoing.

47.     Damages include but are not limited to; 5 sick days, 2 hours of annual leave, lost 10 hours of overtime, unable to put in for at least 20 hours of overtime, 2 holidays, 1 day off, had to meet with a PFA attorney or legal aid 7 times in Doylestown, and had increased anxiety, loss of sleep, weight fluctuation, and sought counseling with "SEAP".

V.     **CHARGES**
COUNT I
Employment Discrimination/Retaliation/Hostile Work Environment
Title VII (42 U.S.C. § 2000e)
Jones v. PSP

Plaintiff incorporates the preceding paragraphs hereto and as though each were repeated verbatim.

48.     Defendants discriminated against Plaintiff based on her protected class, White female, and created a hostile work environment, in violation of Title VII (42 USC 2000e) and the PHRA (43 P.S. § 951-963 et seq.), by taking the following adverse actions; (the totality of adverse actions which created a discriminatory and hostile work environment are detailed above);

a)  sending text messages asking where she was and what she was doing, parking outside her residence, buying her gifts, leaving gifts and food in her work locker and mailbox, take pictures of her with him cell phone....etc.

b)  In April 2015 Plaintiff was scheduled to go to the shooting range when  Acord was the range instructor.

c)  On May 9, 2015 Acord approached Plaintiff her in the patrol room, stood up behind her and gave her a kiss on the neck, then ran out of the room.  This touching was unwelcomed physical contact.

8

d) After Plaintiff reported the kissing incident, and other harassing actions to her supervisor, Sgt. Tinneny he failed to take prompt and/or appropriate action and did *not* advise her to report to the EEO unit.

e) Plaintiff remained on the 7x3 and 3x11 shifts, and occasionally worked at the same time as Acord; Sgt. Tinneny claims he was trying to accommodate, but Acord could have easily been moved to a different platoon, as the alleged harasser.

f) On multiple occasions in September 2015, Acord would show up to the Trevose station hours prior to his shift starting and find Plaintiff in the building for no reason.

g) Acord would send her gifts, sit unusually close to her in the patrol room, and try and take pictures of her.

h) Acord would stalk Plaintiff by sitting outside her house in a patrol vehicle while on duty.

i) Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.

j) On March 22, 2016 internal affairs found Plaintiff's allegations against Acord "unsustained". This allowed Acord to return to Trevose station.

49.    *Acord did not take the above stated adverse actions against male officers and Defendant Tinneny treated complaints by male officers more favorably than Plaintiff's.

50.    The substantial and/or motivating reason for the above mentioned adverse actions was the Plaintiff's race and/or sex. As detailed above, Plaintiff was treated differently than similarly situated officers outside of his protected class; which can be corroborated by other members of the Trevose Station.

51.    These actions affected her ability to perform her normal job functions as a trooper because she altered her work routine to avoid contact with Acord. She would hand in paperwork in the middle of her shift as oppose to the beginning before heading out on the road. This took time out of her patrol work. Also, during the overlap of shifts, if they were alone in the patrol room, she would exit the room with unfinished work.

52.     Plaintiff engaged in the following *protected activity under Title VII and the PHRA*;

a)  On June 11, 2015 Plaintiff made her first official complaint to Cpl. RAI.   Cpl. Rai called Plaintiff on phone about the incident which occurred on May 9th 2015 (kiss in patrol room), and the picture.

b)  On June 23, 2015 Plaintiff talked to Capt. Windel Morris, director of EEO in Harrisburg, regarding Acord and Tinneny and asked why they are not changing *Acord's* schedule but instead changing hers.

c)  On July 14, 2015 she made a formal complaint and was interviewed by an EEO investigator of the PSP regarding Accor's harassment and her other complaints of physical and non physical contact.

d)  August 26, 2015 Plaintiff then filed a charge with the federal EEOC.

e)  Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.  On May 9, 2016 there was a PFA hearing, and the Judge ruled in Plaintiff's favor issuing a 2 year PFA.

53.     *Contemporaneous* or Subsequent to the protected activity, Defendants Acord and Tinneny *retaliated* against Plaintiff for engaging in such activity, which actions include but are not limited to;

a)  sending text messages asking where she was and what she was doing, parking outside her residence, buying her gifts, leaving gifts and food in her work locker and mailbox, take pictures of her with him cell phone....etc.

b)  In April 2015 Plaintiff was scheduled to go to the shooting range when  Acord was the range instructor.

c)  On May 9, 2015 Acord approached Plaintiff her in the patrol room, stood up behind her and gave her a kiss on the neck, then ran out of the room.   This touching was unwelcomed physical contact.

d)  After Plaintiff reported the kissing incident, and other harassing actions to her supervisor, Sgt. Tinneny he failed to take prompt and/or appropriate action and did *not* advise her to report to the EEO unit.

e) Plaintiff remained on the 7x3 and 3x11 shifts, and occasionally worked at the same time as Acord; Sgt. Tinneny claims he was trying to accommodate, but Acord could have easily been moved to a different platoon, as the alleged harasser.

f) On multiple occasions in September 2015, Acord would show up to the Trevose station hours prior to his shift starting and find Plaintiff in the building for no reason.

g) Acord would send her gifts, sit unusually close to her in the patrol room, and try and take pictures of her.

h) Acord would stalk Plaintiff by sitting outside her house in a patrol vehicle while on duty.

i) Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.

j) On March 22, 2016 internal affairs found Plaintiff's allegations against Acord "unsustained". This allowed Acord to return to Trevose station.

55.    Plaintiff alleges that **but-for** her complaints to supervisors, IAD complaint, and/or other opposition to perceived violations of Title VII and the PHRA, Acord and Tinneny would not have engaged in the above stated adverse actions.

56.    The above mentioned conduct was so pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile. Defendants treatment was severe and/OR pervasive, and included physical and unwelcomed touching. The actions of Acord and Tinneny continued for over a year including his most recent internal affairs investigation interview in May 2016. Such behavior affected Plaintiff's work environment, increased stress in performing her job duties, increased stress and anxiety outside the work place and caused her to suffer damages, including; loss of sleep and anxiety.

57.    Defendants failed to take prompt and appropriate action to remedy the situation; specifically, after the first EEO complaint was filed Acord was NOT removed or transferred out of the Trevose station. In November 2015 Plaintiff saw Acord in neighborhood sitting in his patrol vehicle. She immediately notified Sgt. Tinneny who her changed schedule

11

on certain days to avoid contact and he notified IAD; an investigation ensued.  At the end of November Acord was transferred to Dublin station while the second IAD investigation was ongoing.  In March 2016 Plaintiff received a letter from Capt. Tobin which stated the allegations were unsustained.

58.     The PSP has a policy and/or practice, or condones and/or acquiesces to discrimination in employment terms and conditions because of race and/or sex, and/or retaliation for opposing race and/or sex discrimination  or other actions alleged to discriminatory or which create a hostile work environment, in violation of Title VII (42 U.S.C. 2000(e) et seq.). and the PHRA.  This liability is based off the actions of co-worker Acord and supervisor Tinneny who has authority to bind the department in her actions.

59.     Defendant, Tinneny has supervisory authority over Plaintiff's employment terms and conditions, overtime pay, tour of duty, hours of employment, and discipline.  Tinneny, as a supervisor, created and/or carried out the PSP's policy of employment discrimination, hostile work environment and retaliation.

60.     Plaintiff followed the PSP policies and procedures for reporting perceived harassment, discrimination and hostile work environment allegedly created by Acord by following the correct avenues of reporting, such as notifying her supervisors and making a complaint with IAD. Therefore the department is liable for not taking corrective action if they knew, or should have known, that the adverse actions were taking place.

61.     August 26, 2015 Plaintiff then filed a charge with the federal EEOC  and dual filed with the PHRC, alleging retaliation, sex and race discrimination and hostile work environment so to put the PSP on notice of potential liability under the "cat's paw" theory of liability.  The Right-to-Sue letter was issued on May 4, 2016 and received in the mail on May 11, 2016.

COUNT II
Employment Discrimination/Retaliation/Hostile Work Environment
PHRA (43 P.S.§ 951-963 et seq.)
Jones v. PSP and individuals Acord and Tinneny

Plaintiff incorporates the preceding paragraphs hereto and as though each were repeated verbatim.

54.     Defendants discriminated against Plaintiff based on her protected class, White female, and created a hostile work environment, in violation of Title VII (42 USC 2000e) and the PHRA (43 P.S. § 951-963 et seq.), by taking the following adverse actions; (the totality of adverse actions which created a discriminatory and hostile work environment are detailed above);

a) sending text messages asking where she was and what she was doing, parking outside her residence, buying her gifts, leaving gifts and food in her work locker and mailbox, take pictures of her with him cell phone....etc.

b) In April 2015 Plaintiff was scheduled to go to the shooting range when  Acord was the range instructor.

c) On May 9, 2015 Acord approached Plaintiff her in the patrol room, stood up behind her and gave her a kiss on the neck, then ran out of the room.  This touching was unwelcomed physical contact.

d) After Plaintiff reported the kissing incident, and other harassing actiosn to her supervisor, Sgt. Tinneny he failed to take prompt and/or appropriate action and did *not* advise her to report to the EEO unit.

e) Plaintiff remained on the 7x3 and 3x11 shifts, and occasionally worked at the same time as Acord; Sgt. Tinneny claims he was trying to accommodate, but Acord could have easily been moved to a different platoon, as the alleged harasser.

f) On multiple occasions in September 2015, Acord would show up to the Trevose station hours prior to his shift starting and find Plaintiff in the building for no reason.

g) Acord would send her gifts, sit unusually close to her in the patrol room, and try and take pictures of her.

13

h) Acord would stalk Plaintiff by sitting outside her house in a patrol vehicle while on duty.

i) Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.

j) On March 22, 2016 internal affairs found Plaintiff's allegations against Acord "unsustained". This allowed Acord to return to Trevose station.

55.     *Acord did not take the above stated adverse actions against male officers and Defendant Tinneny treated complaints by male officers more favorably than Plaintiff's.

56.     The substantial and/or motivating reason for the above mentioned adverse actions was the Plaintiff's race and/or sex. As detailed above, Plaintiff was treated differently than similarly situated officers outside of his protected class; which can be corroborated by other members of the Trevose Station.

57.     These actions affected her ability to perform her normal job functions as a trooper because she altered her work routine to avoid contact with Acord. She would hand in paperwork in the middle of her shift as oppose to the beginning before heading out on the road. This took time out of her patrol work. Also, during the overlap of shifts, if they were alone in the patrol room, she would exit the room with unfinished work.

58.     Plaintiff engaged in the following *protected activity under Title VII and the PHRA;*

a) On June 11, 2015 Plaintiff made her first official complaint to Cpl. RAI. Cpl. Rai called Plaintiff on phone about the incident which occurred on May 9th 2015 (kiss in patrol room), and the picture.

b) On June 23, 2015 Plaintiff talked to Capt. Windel Morris, director of EEO in Harrisburg, regarding Acord and Tinneny and asked why they are not changing *Acord's* schedule but instead changing hers.

c) On July 14, 2015 she made a formal complaint and was interviewed by an EEO investigator of the PSP regarding Accor's harassment and her other complaints of physical and non physical contact.

14

d) August 26, 2015 Plaintiff then filed a charge with the federal EEOC.

e) Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.  On May 9, 2016 there was a PFA hearing, and the Judge ruled in Plaintiff's favor issuing a 2 year PFA.

59.     *Contemporaneous* or Subsequent to the protected activity, Defendants Acord and Tinneny *retaliated* against Plaintiff for engaging in such activity, which actions include but are not limited to;

a) sending text messages asking where she was and what she was doing, parking outside her residence, buying her gifts, leaving gifts and food in her work locker and mailbox, take pictures of her with him cell phone....etc.

b) In April 2015 Plaintiff was scheduled to go to the shooting range when  Acord was the range instructor.

c) On May 9, 2015 Acord approached Plaintiff her in the patrol room, stood up behind her and gave her a kiss on the neck, then ran out of the room.  This touching was unwelcomed physical contact.

d) After Plaintiff reported the kissing incident, and other harassing actiosn to her supervisor, Sgt. Tinneny he failed to take prompt and/or appropriate action and did *not* advise her to report to the EEO unit.

e) Plaintiff remained on the 7x3 and 3x11 shifts, and occasionally worked at the same time as Acord; Sgt. Tinneny claims he was trying to accommodate, but Acord could have easily been moved to a different platoon, as the alleged harasser.

f) On multiple occasions in September 2015, Acord would show up to the Trevose station hours prior to his shift starting and find Plaintiff in the building for no reason.

g) Acord would send her gifts, sit unusually close to her in the patrol room, and try and take pictures of her.

h) Acord would stalk Plaintiff by sitting outside her house in a patrol vehicle while on duty.

i) Based on the failure by her supervisors to separate Plaintiff and trooper Acord, she has had to file for a Protection From Abuse order ("PFA") in local court.

j) On March 22, 2016 internal affairs found Plaintiff's allegations against Acord "unsustained". This allowed Acord to return to Trevose station.

62.   Plaintiff alleges that **but-for** her complaints to supervisors, IAD complaint, and/or other opposition to perceived violations of Title VII and the PHRA, Acord and Tinneny would not have engaged in the above stated adverse actions.

63.   The above mentioned conduct was so pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile. Defendants treatment was severe and/OR pervasive, and included physical and unwelcomed touching. The actions of Acord and Tinneny continued for over a year including his most recent internal affairs investigation interview in May 2016. Such behavior affected Plaintiff's work environment, increased stress in performing her job duties, increased stress and anxiety outside the work place and caused her to suffer damages, including; loss of sleep and anxiety.

64.   Defendants failed to take prompt and appropriate action to remedy the situation; specifically, Acord was not moved out of the Trevose station until after Tinneny filed a second IAD and Plaintiff filed for a PFA against him.

65.   The PSP has a policy and/or practice, or condones and/or acquiesces to discrimination in employment terms and conditions because of race and/or sex, and/or retaliation for opposing race and/or sex discrimination  or other actions alleged to discriminatory or which create a hostile work environment, in violation of Title VII (42 U.S.C. 2000(e) et seq.). and the PHRA. This liability is based off the actions of co-worker Acord and supervisor Tinneny who has authority to bind the department in her actions.

66.   Defendant, Tinneny has supervisory authority over Plaintiff's employment terms and conditions, overtime pay, tour of duty, hours of employment, and discipline. Tinneny, as a

16

supervisor, created and/or carried out the PSP's policy of employment discrimination, hostile work environment and retaliation.

67.     Plaintiff followed the PSP policies and procedures for reporting perceived harassment, discrimination and hostile work environment allegedly created by Acord by following the correct avenues of reporting, such as notifying her supervisors and making a complaint with IAD. Therefore the department is liable for not taking corrective action if they knew, or should have known, that the adverse actions were taking place.

68.     August 26, 2015 Plaintiff then filed a charge with the federal EEOC.  and dual filed with the PHRC, alleging retaliation, sex and race discrimination and hostile work environment so to put individual Acord and Tinneny on notice of potential liability under the employment discrimination laws of the United States and Commonwealth of Pennsylvania and under federal law for a "aider and abettor" theory of liability.

69.     Plaintiff has waited the 180 day allotted time provided by the PHRA which allows her to file this action in federal court.

COUNT III
CIVIL ASSAULT
Restatement Second of Torts § 21
<u>Jones v. Acord</u>

70. The preceding paragraphs are fully incorporated as though repeated verbatim.

60.     On May 9, 2015, Acord physically assaulted Plaintiff while she was on duty in the patrol room. Plaintiff and Acord had overlapping shifts and Acord approached her in the patrol room.  Acord asked her why they were not going together to the shooting range that day, **then stood up behind her and gave her a kiss on the neck**, then ran out of the room before she was able to respond.  This touching was unwelcomed physical contact.

71.     This incident created an unreasonable risk of causing Plaintiff bodily harm and subjected her to fright, shock, and unwelcomed physical contact.

17

72.     Based on Acord's actions he had the intent to cause imminent apprehension of, or actual harmful or offensive bodily contact, and Plaintiff was in fact the victim of harmful or offensive bodily contact when Acord stood in close proximity to Plaintiff and kissed her on the back of the neck, while blocking her with his body so she could not leave.

73.     Plaintiff suffered compensable damages in this case including psychological distress; anxiety; loss of sleep; loss of appetite; and increased stress.

74.     Defendant, Acord, was the direct, indirect and legal cause of Plaintiff's damages as specified above which damages are compensable under the law.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court enter judgment for them and against the Defendants; to hold the Defendants jointly and severally liable; to award the Plaintiff such relief as to make Plaintiff whole, including such relief as, but not limited to, compensatory, consequential and punitive damages, overtime pay, reassignment, transfer, reasonable attorney fees, litigation costs, and any and all other such relief, including equitable relief, allowed by law or that the Court deems proper and just; including declaring the Defendants acts, actions or omissions to have violated the Plaintiffs' rights.

Date:   August 3, 2016                              Respectfully submitted,

                                                    BY

                                                    Alexis I. Lehmann, Esq.
                                                    Attorneys for Plaintiff
                                                    LAW OFFICES OF BRIAN M. PURICELLI, ESQ.
                                                    2721 Pickertown Rd.
                                                    Warrington PA 18976
                                                    Office: (215) 504-8115/ direct: (215) 504-8116
                                                    zafferesa@puricellilaw.com

# EXHIBIT

# A

# EQUAL EMPLOYMENT OPPORTUNITY DISCRIMINATION COMPLAINT

| | |
|---|---|
| Equal Employment Opportunity<br>**DISCRIMINATION COMPLAINT** | EEOO Tracking Number |

The information on this form should be completed for all alleged discrimination and sexual harassment complaints. The completed complaint form should be signed by the complainant. Upon completion, pleases forward to the Equal Opportunity Manager/Specialist or the individual responsible for EEO in your agency.

Agency Name and Address
**PA State Police**
**1800 Elmerton Ave.**
**Harrisburg, PA. 17110**

1. Complainant's Name

**Rachel Jones**

Home Telephone No.

**(cell) 267-474-4556**

2. Are you currently employed by the above agency?

☒ Yes          ☐ No

Home Address

**1451 Neshaminy Valley Drive, Bensalem, PA. 19020**

3. Present Job Title

**Patrol Trooper**

Status

**Active**

Work Unit

**Patrol Unit**

Location

**Troop M/Trevose Station**

Work Telephone No.

**215-942-3900**

Length of Service in Classification

**4 years**

4. Date of the Alleged Discriminatory Practice

**June 2014 until present**

5. Basis of the Alleged Discriminatory Practice

☐ RACE
☒ GENDER
☐ NATIONAL ORGIN
☐ ANCESTRY
☐ RELIGION

☐ AGE
☐ DISABILITY
☐ RETALIATION
☒ OTHER (SPECIFY)
Sexual Harassment

6. The Discrimination Occurred in Connection With

☐ INTERVIEW
☐ HIRING SELECTION
☐ PROMOTION
☐ LAYOFF
☐ TRANSFER

☐ DISCIPLINARY ACTION
☐ COMPENSATION
☐ TRAINING OPPORTUNITY
☐ OTHER (SPECIFY)

7. Facts of the Alleged Discriminatory Employment Practice Are:

I have been, sexually harassed (as defined in Administrative Regulation 4-26) by Trooper Craig Acord. This sexual harassment has been on-going for approximately 1 year. This sexual harassment culminated in unwanted physical contact in early May of 2015. I personally confronted Trooper Acord about the matter and three weeks later it continued.

I was involved in a romantic relationship with Trooper Acord from June of 2013 to June of 2014. Several days after the relationship ended Trooper Acord told me that he wanted to get back together with me and asked me if we could meet for dinner. I told him that the relationship was over and that I did not want to meet with him.

(OVER)

On two separate occasions between July 2014 and September of 2014 Trooper Acord saw me while he was on duty in a patrol vehicle and I was in my personal vehicle. He texted me both times and asked me where I was going.

Between the dates of July of 2014 and February 2015 Trooper Acord sent me flowers and gifts to my apartment, on four separate occasions, which were unsolicited. Additionally, he has repeatedly asked me to go on dates and trips with him over text messages and in person, all of which I have repeatedly declined.

8. Please provide supporting documents which form the basis for the discriminatory practice you are claiming. As indicated in your response to number 5 of this form.
Describe attachments:

9. Person(s) who you believe discriminated against you.

| Name | Title | Location | Telephone No. |
|------|-------|----------|---------------|
| Craig Acord | Patrol Trooper | Troop M/Trevose Station | 215-942-3900 |

10. Have you made an effort to resolve the alleged discrimination through your supervisors, the grievance procedure, or with any public or private organization?

If "Yes", what procedure did you use?
I have advised numerous supervisors at Troop M to no avail.

Trooper Rachel Jones                                July 14th, 2015

_____          _____
Complainant's Signature                                          Date

_____          _____
Equal Opportunity Manger/Specialist or the Individual Responsible for EEO in Your Agency          Date

## EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

On the evening of December 7th, 2014 I was at my martial arts studio practicing alone. I received a text at 1916 hours from Trooper Acord stating: "How was your practice today?" I never told Trooper Acord where I was going or what I would be doing. This made me very uneasy. I replied: "Craig, I hope we can always be cool at work, but I do think you should stop texting me. I hope that you can understand." He replied: "Ok weet (a pet name that he called me when we were dating) I'm sorry. On December 14th, 2014 the texting continued despite me asking him to stop.

In addition to the unwelcomed text messaging from Trooper Acord, he regularly sat uncomfortably close to me in the Patrol Room at the Trevose Station on purpose. He would also leave unwanted candy in my work mailbox on a weekly basis.  On January 9th, 2015 he sent me a text that said: "I kinda like sending you messages that you don't reply to."

On January 17th, 2015 at approximately 2000 hours Trooper Acord sent me several texts asking me to get back together with him and to move in with him. I told him no. I had already been telling him no for approximately six months at that point. He replied: "Ok weet! I will leave you alone!"

On February 2nd, 2015 at 2325 hours the unwanted texting continued by Trooper Acord.

In late March of 2015 Trooper Jeffrey Hand told me that he saw Trooper Acord put a box of pop tarts in my work mailbox. Trooper Hand told me that he had asked Trooper Acord what was he doing and told him that he needed to "move on", or that he was going to wind up getting himself into trouble.

On March 27th, 2015, when texting from Trooper Acord would not stop, I blocked his phone number.

Page #3

# EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

Around the same time of this incident I was schedule to go to the range with Trooper Acord when I was approached by Corporal Kevin Mills about the matter. Corporal Mills related that he knew that I was uncomfortable around Trooper Acord and asked if I would like to switch my range date to avoid Trooper Acord. I told him yes and that I had to block Trooper Acord's phone number. He asked me if I wanted to make the Station Commander, Sergeant Mike Tinneny aware of this incident. I told him no and that I hoped Trooper Acord would get the point now that his number was blocked from my phone. However, I advised Corporal Mills that I would advise him if the harassment from Trooper Acord continued.

In April 2015 Trooper Acord asked me, several times, in person and over the Mobile Data Terminal in our Patrol Vehicles for me to unblock his number from my phone. He told me that he had sent me "like twenty-seven messages" that I had not replied to. I told him that I would not unblock his number or respond to his messages.

While I was working at the Communications Desk Trooper Acord inquired about a specialty position that I had applied for in the Department. He went on to ask me if the position would require me to relocate to the Harrisburg area. I told him that it would require me to move. He then stated: "Great, now I am going to have to move to Harrisburg!"

In April of 2015 I began to alter my work routine if knew that Trooper Acord was coming in to work the midnight shift. I returned to station in the middle of my shift to complete paper work that I would typically have completed at the end of my shift. I did this to avoid seeing him.

On May 9th, 2015 I was working 0700-1500 hours. At approximately 0700 hours I was in the Trevose Patrol Room on the computer.

Page #4

## EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

Trooper Acord was sitting next to me, facing me, uncomfortably close to my personal physical space. Trooper Acord proceeded to state three times: "You'll always be my weet." He then stood up, came up from behind me, and kissed me on the neck while on duty and in the Patrol Room.

On May 10th, 2015 at approximately 0700 hours I asked to speak with Trooper Acord in the hallway at the barracks. And I stated: "Yesterday, what the fuck was that about?! That is not okay!" Trooper Acord stated several times: "I know, I know, I'm sorry I know." I replied: "Craig, I have been trying so long to be professional, but you are making it impossible. He again said, "I know, I'm sorry."

Shortly thereafter, Trooper Acord went to Bangkok, Thailand for three weeks. When he returned on June 8th, 2015 he approached the window of my patrol car while I was in the parking lot of the station. He said: "I was thinking of you while I was there. I got you a present. I'll give it to you later." I told him that he should not have gotten me a present.

On June 10th, 2015 I was working the 1400-2200 hour shift with Trooper Acord and Trooper Christopher Taviner. Trooper Acord pulled in a center turnaround that I was sitting in and he winked at me. A few moments later I was dispatched to a disabled motorist that I responded to. When I returned back to the station, at the end of my shift, I put the patrol schedule on the table and leaned over it to take a picture of it to save on my personal phone. At the same time Trooper Acord came up behind me and took a "selfie" of him and my backside. Trooper Christopher Taviner asked him, "What the hell are you doing?"

On June 11th, 2015 at approximately 0920 hours I contacted Corporal Hardeep Rai. I told him about the incident and the unwanted physical contact that had occurred to me on May 9th, 2015. I told Corporal Rai that I needed supervisory assistance in dealing with the Sexual Harassment involving Trooper Acord. Corporal Rai advised me that he would contact the Station Commander, Sergeant Mike Tinneny.

Page#5

## EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

On June 11th, 2015 at approximately 1030 hours I met with Sergeant Mike Tinneny in the parking of the Target Department store by the station, as he requested. I explained the incident that occurred on May 9th, 2015 in detail and advised him that I confronted Trooper Acord about the Sexual Harassment the following day. I also told Sergeant Tinneny that I had blocked Trooper Acord's number from my phone back in March of 2015.

On June 11th, 2015 at 1121 hours I received a phone call from Crime Section Commander Lieutenant Joseph Sokolofski. He advised me that he had spoken to Sergeant Tinney and he asked if Trooper Acord's actions were harassing, or sexually harassing. I then began to explain the incident that occurred on May 9th, 2015 to Lieutenant Sokolofski. I was confused by Lieutenant Sokolofski's question and advised him that May 9th, 2015 was the only time that Trooper Acord had made unwanted physical contact with me in the workplace.

Lieutenant Sokolofski then asked me, "other than him kissing you in the Patrol Room was he just an ex-boyfriend who was annoying and couldn't take a hint?" I told him yes, that Trooper Acord had been harassing me for about a year.

On June 15th, 2015 at 1440 hours I spoke to Lieutenant Joseph Sokolofski by phone. He advised me that Trooper Acord had been told to have no contact with me unless it was a work related matter. He asked me if I was okay with that. I told him that I was still concerned about the days we were scheduled to work together and the change of shifts where we would see each other. He told me to let him know if Trooper Acord had any contact with me, but at that time he didn't feel there was a need for an investigation.

On June 19th, 2015 I spoke to Captain Brian Tobin at Troop M's Camp Cadet. He told me that Trooper Acord's behavior was unacceptable and that something was drawn up for Trooper Acord to sign. He also told me Trooper Acord was also told not to have any contact with me. I told him I was concerned with the times that we would still be seeing each other at station. He told me to let him know if there was a problem.

Page#6

## EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

On June 23rd, 2015 at approximately 1045 hours Corporal Kevin Mills asked to meet with me. He told me to keep an eye on the schedule. Sergeant Tinneny told him to change my 0700-1500 shifts to 1500-2300 shifts so I wasn't working with Trooper Acord on certain days. I asked Corporal Mills why my schedule was being changed and not Trooper Acord's. He explained that because Trooper Acord was working the midnight shift he could not work 1500-2300 on certain days.

On June 23rd, 2015 at approximately 1630 hours I received a call from the Equal Employment Opportunity Director, Captain Wendell Morris. Captain Morris seemed somewhat familiar with the circumstances, but I again explained that at the beginning of May, 2015 Trooper Acord kissed me on the neck in the patrol room while we were both working. Captain Morris asked if I had a relationship with Trooper Acord. I told him that the relationship ended a year ago. I also told him that I had asked Trooper Acord to stop texting me and when he would not I had to block his phone number in March. Captain Morris told me that it's always awkward when people break up. I again reiterated that we broke up a year ago and I had confronted him about kissing me but the unwanted behavior continued. I told him that I was uncomfortable being in the patrol room and working with Trooper Acord.

I also asked Captain Morris why my schedule was now being changed instead of Trooper Acord's. He told me that due to operational needs Trooper Acord's schedule may not be able to be changed, but that my schedule shouldn't be changed either. He told me that I could still work the same shift as Trooper Acord. I told him I would rather just have my shift changed if that was my only option. He asked me what I was hoping would be done in this situation. I told him that I didn't want to work with Trooper Acord and I didn't want my shift changed. I asked Captain Morris if I transferred out of the station if he would be able to make sure that Trooper Acord would not be able to transfer to that station also. I explained that Trooper Acord told me that he would follow me to Harrisburg if I moved. Captain Morris said, "I guess if you transferred and I saw he was going to the same place. I guess I could try to block that."

Page#7

## EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

Over the 4th of July weekend all of the Troopers working were offered 4 hours of overtime to use before or after their shift. On July 2nd, 2015 at approximately 1500 hours I told Corporal Mills that I was concerned that Trooper Acord was going to come in during the middle of my shift (before his midnight shift) to do his overtime. Corporal Mills told me that he understood my concern but Sergeant Tinneny told the Corporals they were not to talk to me about the situation involving me and Craig so he would have to contact Sergeant Tinneny.

On July 3<sup>rd,</sup> 2015 Corporal Mills told me to call Sergeant Tinneny regarding the OT. I expressed my concerns to Sergeant Tinneny that Trooper ACORD would be coming in during the middle of my shift. He told me that I would be fine. That he would make me a "northern" zone and we probably wouldn't even see each other.

On July 10th, 2015 at approximately 0715 hours I saw that I was scheduled to work July 13th-15th 0700-1500 with Trooper Acord.  At 1030 hours I contacted Corporal RAI and asked him if the schedule could be changed. He told me he would talk to Sergeant Tinneny. He called me back and told me Trooper Acord had now taken a personal day on Monday. He could make me 1200-2000 hours on Tuesday, because I had court and Wednesday I could work 1500-2300 or use a holiday. On July, 13th at 1330 hours I was advised by the dispatcher that my court was continued for Tuesday and asked if I now wanted to work 1500-2300.

I do not feel as though my Station Commander, Sergeant Mike Tinneny nor does the Crime Section Commander, Lieutenant Joseph Sokolofski have my best interest in mind. I am the only female trooper at the Trevose Station, and they were aware that there was a very extensive history of harassment by Trooper Acord. They have not relieved me of this Hostile Work Environment, which has made working at the Trevose Station unbearable.

Page#8

## EEO/SEXUAL HARASSMENT/DISCRIMINATION COMPLAINT

Due to the lack of confidence that I have in my commanders to impartially enforce Departmental Regulations, EEO/Sexual Harassment Policy, State and Federal Criminal/Civil Statutes I am actively looking to transfer out of Troop M/Trevose and go to Troop H/Harrisburg. This must be done because this situation with Trooper Acord is escalating out of control and I am in fear of my safety as I do not know what he will or will not do next.