IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL JONES,<br>        Plaintiff,<br><br>v.<br><br>PENNSYLVANIA STATE POLICE AND<br>MIKE TINNENY,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 16-4205 |

## MEMORANDUM OPINION

This discrimination case by Plaintiff Rachel Jones against her employer, the Pennsylvania State Police ("PSP") and supervisor, Sergeant Mike Tinneny, raises two questions. The first is whether Defendants created a hostile work environment by failing to take prompt and adequate remedial action upon learning that Plaintiff was sexually harassed by a co-worker. The second is whether Defendants retaliated against Plaintiff for lodging a sexual harassment complaint by changing her work schedule and offering to transfer her to another police station.

Plaintiff's hostile work environment and retaliation suit is brought under Title VII of the Civil Rights Act of 1968 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 *et seq*. Defendants have moved for summary judgment on all claims. The motion shall be granted in part and denied in part.

### I.    FACTS

In March 2013, Plaintiff Rachel Jones started working as a patrol trooper for PSP at its Trevose station where she met fellow patrol trooper Craig Acord. They started dating in June 2013 but ended the relationship a year later. A month after the break-up, Acord sent Plaintiff multiple text messages, asking if they could meet over dinner and resume dating. Plaintiff declined but did not report Acord's text messages to her supervisors. Acord continued to pursue

her, sending her gifts and flowers from July 2014 into February 2015. Plaintiff did not directly report these gifts to her supervisors but she said that two higher ranked officers, Corporals Hardeep Rai and Kevin Mills, were aware of the situation: Rai because he supervised both Plaintiff and Acord, and Mills because Plaintiff talked to him about whether to change the timing of her lessons at the gun range so as to avoid Acord.

Things escalated on May 9, 2015, when Acord approached Plaintiff in the Trevose station patrol room and kissed her on the neck without her permission. Then, on June 10, 2015, Acord took a picture of himself next to Plaintiff as she was bending over. The next day, Plaintiff asked for Rai's help to stop Acord's harassment of her. He immediately contacted Sergeant Tinneny, Station Commander of the Trevose station, who met with her that same day. She told him about Acord's kiss in the patrol room and his inappropriate picture. After the conversation, Tinneny met with Acord, told him to have no contact with Plaintiff, and sent him home.

A few days later, Acord met with Tinneny, Lieutenant Joseph Sokolofski, and Captain Brian Tobin. During this meeting, the supervisors made a notation on Acord's record and advised him to cease contact with Plaintiff unless it was necessary to complete a job assignment. Failure to abide by this restriction could result in disciplinary actions, including termination. Acord signed the notation. After issuance of the notation, Mills changed both Plaintiff's and Acord's schedules so the two would not have contact. Acord neither touched Plaintiff nor talked to her after the notation was issued.

In July 2015, Plaintiff raised concerns about working potentially overlapping shifts with Acord. Tinneny offered Plaintiff a transfer to PSP's Dublin station, but Plaintiff declined and remained at Trevose.

Believing that PSP's response to her concerns was inadequate, Plaintiff filed a discrimination complaint with both PSP's Equal Employment Opportunity office and with the federal Equal Employment Opportunity Commission. Plaintiff then sued both PSP and Tinneny for hostile work environment and retaliation. Plaintiff also asserted PHRA accomplice claims against Tinneny for aiding-and-abetting violations of the PHRA.

## II. LEGAL STANDARD

"[S]ummary judgment is appropriate where there is 'no genuine dispute of material fact' and the moving party is 'entitled to judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986)). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe*, 480 F.3d at 256 (citing *Celotex*, 477 U.S. at 322-26). The moving party is entitled to judgment as a matter of law if the non-moving party fails to make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

## III. DISCUSSION

### A. Hostile Work Environment Claims against Defendants

Under Title VII, an employer may not "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In particular, "Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). A hostile work environment claim under the PHRA is interpreted coextensively with a Title VII hostile work environment claim. *See id.* at 163 (citing *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006)).

To prevail on a hostile work environment claim, the plaintiff must establish, among other things, the existence of respondeat superior liability.[1] *Id.* at 167. Plaintiff asserts Title VII retaliation claims against PSP and Tinneny, and a PHRA retaliation claim against Tinneny. Defendants argue that respondeat superior liability cannot attach here because PSP took reasonable remedial steps to halt Acord's sexual harassment of Plaintiff.

#### 1. Whether Acord Was a Supervisor or Co-Worker

As a threshold matter, "[t]he basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel*, 706 F.3d at 169. If Acord is a supervisor, PSP may be held liable as a principal under rules of agency law. *See Moody v. Atlantic City Bd. of Ed.*, --- F.3d ---, 2017 WL 3881957, at *6

---

[1] The other elements for a hostile work environment claim require showing that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff" and "4) the discrimination would detrimentally affect a reasonable person in like circumstances." *Mandel*, 706 F.3d at 167.

(3d Cir. Sept. 6, 2017). No reasonable juror could find that Acord was a supervisor. Plaintiff has failed to point to any record evidence indicating that Acord could take "tangible employment actions" against Plaintiff such as firing or failing to promote her. *See id.* at \*6. Both Plaintiff and Acord held the same rank of patrol trooper, and both were supervised by Rai.

### 2. Respondeat Superior Liability

Because Acord is a co-worker, employer liability will arise only if (1) "the employer failed to provide a reasonable avenue for complaint" or (2) "the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Plaintiff does not contend that PSP failed to provide a reasonable avenue for her sexual harassment complaint. Thus, PSP can be liable only if it was "negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Id.* at 105.

Under the negligence standard, an employer may be liable for failure to respond "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action." *Knabe v. Boury Corp*, 114 F.3d 407, 411 (3d Cir. 1997) (internal quotation marks omitted). For instance, in *Knabe*, the Third Circuit held that the employer's remedial action was adequate as a matter of law because "management undertook an investigation of the employee's complaint within a day after being notified of the harassment, spoke to the alleged harasser about the allegations and the company's sexual harassment policy, and warned the harasser that the company does not tolerate any sexual comments or actions." *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007) (summarizing *Knabe*).

5

Two related fact issues preclude summary judgment as to Plaintiff's hostile work environment claim. First, the record does not fully disclose whether Corporals Rai and Mills can be regarded as management-level employees whose knowledge may be vicariously imputed to PSP. A management-level employee includes a person "sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under him, such as a departmental or plant manager, so that such knowledge is important to the employee's general managerial duties." *Huston*, 568 F.3d at 107. Plaintiff argues that Rai and Mills are "first line supervisors" whose knowledge of Acord's harassment should be vicariously attributed to PSP. Plaintiff fails to cite to any specific evidence detailing the scope of their administrative responsibilities or general duties. Nonetheless, the record shows that at least on one occasion, Rai personally spoke to Acord and asked that he take the day off to avoid being scheduled together with Plaintiff on a work shift. Accordingly, as both Plaintiff's and Acord's supervisor, Rai may have had the "authority to act on behalf of the employer to stop the harassment." *See Huston*, 568 F.3d at 107. Further, the record shows that Mills was responsible for scheduling training for the troopers, though it is unclear as to whether he had the independent power to re-arrange Plaintiff's and Acord's schedule without authorization from Tinneny. Thus, like Rai, Mills may have had the authority to act on behalf of PSP to stop Acord's harassment.

Second, Plaintiff has established a genuine dispute concerning the date of Rai's and Mills's actual knowledge of Acord's harassment. Plaintiff testified that before lodging her first complaint to Rai on June 11, 2015, he "knew how things were starting to be uncomfortable" for several months. According to Plaintiff, she had previously told at least three fellow troopers in April that she did not want to be alone with Acord. Rai, on the other hand, testified that he was "unaware of any tension between [Plaintiff] and Trooper Acord" until Plaintiff personally

6

informed him of Acord's behavior. Although he heard about Plaintiff and Acord's breakup through the troopers at Trevose, Rai maintains that he learned "nothing specific." The parties also disagree over Mills's awareness of Acord's harassment. Plaintiff contends that Mills approached her around April of 2015, asking her if she would like to change schedules for her shooting lessons so she could avoid Acord. PSP disputes this, asserting that Plaintiff was the one who affirmatively contacted Mills to re-schedule her training session at the gun range. If Rai and Mill are management-level employees, a jury could reasonably conclude that PSP had early knowledge of Acord's sexual harassment and was negligent in remedying the problem. *See Knabe*, 114 F.3d at 411 (failure to take prompt *and* adequate remedial action renders employer liable for hostile work environment claim).

Because Rai's and Mills's status as management-level personnel is in dispute and because when they had actual knowledge of Acord's sexual harassment is also in dispute, summary judgment as to Plaintiff's hostile work environment claims under Title VII and the PHRA shall be denied.

### B. Retaliation Claims against Defendants

Title VII's anti-retaliation provision prohibits employer actions that discriminate against an employee because she has "opposed any practice made an unlawful employment practice" under Title VII, or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). Plaintiff asserts that she was retaliated against by PSP and Tinneny for reporting Acord's sexual harassment. Specifically, Plaintiff claims that PSP and Tinneny retaliated by (a) changing her work schedule and (b) offering her the option to transfer to another police station.

7

Retaliation claims under Title VII and the PHRA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The Court will not analyze the entire burden-shifting process because the parties only discussed whether Plaintiff has made a prima facie case of retaliation.[2] A retaliation plaintiff makes a prima facie case "by showing (1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.* (internal quotation marks omitted).

Summary judgment as to Plaintiff's retaliation claims shall be granted for two reasons. First, Tinneny's offer to transfer stations was not, as a matter of law, an "adverse action." Second, Plaintiff fails to point to any record evidence indicating a causal connection between her participation in a protected activity and the schedule change.

### 1. Adverse Action – Tinneny's Offer to Transfer

Employer action is materially adverse if it "dissuade[s] a reasonable worker from making or supporting a charge of discrimination." *Daniels*, 776 F.3d at 195 (quoting *Burlington Northern*, 548 U.S. at 53). Adverse employment action is "action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). Because the option to transfer stations was an offer that Plaintiff declined without any consequence, Defendants took

---

[2] If Plaintiff is able to establish a prima facie case of retaliation, the *McDonnell Douglas* framework shifts the burden of production of evidence to the employer to "present a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. If such a reason is provided, "the burden shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks omitted).

no action that changed the "compensation, terms, conditions, or privileges" of Plaintiff's employment. *See id.*; *cf. Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 115-16 (3d Cir. 1996) (holding that plaintiff's involuntary transfer to new police assignment precluded summary judgment on Title VII retaliation claim). Accordingly, Plaintiff's retaliation claim, as premised on Tinneny's offer to transfer stations, shall be dismissed.

### 2. Causation – Plaintiff's Schedule Change

Plaintiff's claim that her schedule change was prompted by her sexual harassment complaint requires an evaluation of whether there was a causal connection between the two events – her complaint and the schedule change. Causation at the prima facie stage requires that the plaintiff "produce evidence sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (internal quotation marks omitted). A plaintiff need not establish "but-for" causation at this step of the *McDonnell Douglas* framework. *Id.* at 257. A plaintiff may rely on a "broad array of evidence" to show a causal link between her protected activity and the adverse action taken against her. *Id.* (citing *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)).

Nevertheless, Plaintiff has failed to point to any record evidence which indicates that her lodging a sexual harassment claim was the "likely reason" for her schedule change.[3] *See id.* at 259. The record shows that the reason for the schedule change was to keep Acord away from her and not because of her charge of sexual harassment. Mills changed Acord's schedule to ensure that he would have no contact with Plaintiff and, in one instance when Acord attempted to work at Trevose during the same time as Plaintiff, Rai asked him to leave. Although there were

---

[3] The Court assumes, without deciding, that Plaintiff's schedule change is an "adverse action" for her retaliation claim.

changes to Plaintiff's schedules, they were logistically necessary to stop additional contact; Mills could not alter only Acord's schedule because it would result in Acord working a sixteen-hour shift. Although Plaintiff may have been inconvenienced by her accompanying schedule change, PSP's reason, based on the record, was to prevent further harassment from Acord. Thus, summary judgment shall be granted as to Plaintiff's retaliation claim to the extent it is premised on her schedule change.

### C. PHRA Aiding-and-Abetting Claim against Tinneny

The PHRA prohibits any person from aiding and abetting "the doing of any act declared by [the PHRA] to be an unlawful discriminatory practice." 43 Pa. C.S. § 955(e). An "individual supervisory employee" may be liable for "his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." *Brzozowski v. Pa. Turnpike Comm'n*, 165 F. Supp. 3d 251, 263 (E.D. Pa. 2016) (quoting *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998)). A PHRA aiding-and-abetting claim cannot survive "if there is no primary violation of the PHRA." *Elmarakaby v. Wyeth Pharmaceuticals, Inc.*, 09-1784, 2015 WL 1456686, at *9 (E.D. Pa. Mar. 30, 2015); *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 357 n.5 (E.D. Pa. 2013) ("If the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice.").

Plaintiff's aiding-and-abetting claim against Tinneny shall be dismissed to the extent that it relies on a retaliation claim under the PHRA. Because PSP did not retaliate against Plaintiff, Tinneny could not have aided and abetted PSP's retaliation. However, summary judgment will be denied insofar as Plaintiff's aiding-and-abetting claim turns on a hostile work environment claim.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

**10/02/17**