IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL JONES,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| PENNSYLVANIA STATE POLICE AND<br>MIKE TINNENY,<br>　　　　　Defendants. | NO. 16-4205 |

### MEMORANDUM OPINION

In this employment discrimination case, Plaintiff Rachel Jones asserted a claim for a hostile work environment under Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. 951 *et seq.*, against Defendants Pennsylvania State Police ("PSP") and Sergeant Mike Tinneny. Plaintiff was, during the relevant times of her Complaint, a patrol trooper for the PSP. According to Plaintiff, the PSP failed to stop her co-worker and ex-boyfriend, Trooper Craig Acord, from harassing her. Plaintiff furthermore claimed that Sergeant Tinneny aided and abetted the hostile work environment.

After a four-day trial, the jury awarded $250,000 to Plaintiff, finding that the PSP violated both Title VII and the PHRA. Sergeant Tinneny was found not liable. Defendants now move for a new trial under Rule 59 of the Federal Rules of Civil Procedure or, alternatively, seek a reduction of the jury's award. For the reasons that follow, Defendants' motion shall be denied.

### I.　　LEGAL STANDARD

On motion, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). However, "it should do so only when 'the great weight of the evidence cuts against the verdict

and . . . a miscarriage of justice would result if the verdict were to stand." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)). The power to grant a new trial is limited to ensure that a court "does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *See id.* (quoting *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996)); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc). Indeed, granting a new trial may "effect[] a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts." *Id.* (internal quotation marks omitted).

## II. DISCUSSION

In moving for a new trial, Defendants contend that: (1) the Court committed an error of law when it denied, during trial and from the bench, Defendants' motion to amend the pleadings under Rule 15(a) of the Federal Rules of Civil Procedure; and (2) the jury instructions confused and misled the jury. Each purported error will be considered in turn.

### a. Request for Amendment under Rule 15

#### i. *Defendants' Initial Request for Amendment under Rule 15(b)*

Before addressing the merits of Defendants' request for amendment under Rule 15(a), some procedural background is necessary. On January, 11, 2017, Defendants' filed an Answer in which they admitted, *inter alia*, that:

- Plaintiff's complaints about harassment by Acord "were not taken seriously";

- Plaintiff reported Acord's harassment to a lieutenant, but was told "there was no need for an investigation" at the time;

- Internal Affairs of the PSP conducted witness interviews only after Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"); and

2

- Starting in November 2015, the PSP began investigating Plaintiff's harassment claim pursuant to a second EEOC complaint.

During trial, Plaintiff sought to read those admissions into evidence. In response, Defendants submitted a letter to the Court, styled as a "Motion to Amend," which sought leave to amend their Answer pursuant to Federal Rule of Civil Procedure 15(b)(1) to "conform to the discovery and evidence as it has been presented at trial."

Rule 15(b)(1) authorizes amendment of pleadings in two ways: (i) when "a party objects that evidence is not within the issues raised in the pleadings" or (ii) when an "issue" is "tried by the parties' express or implied consent." Ruling from the bench, the Court found that Defendants had not shown – either by letter or in argument – that either provision applied and, thus, denied the motion. Defendants have not challenged that decision here.

### ii. *Defendants' Subsequent Oral Request for Amendment under Rule 15(a)*

However, after the Court's decision on their Rule 15(b) motion, Defendants switched their theory for an amendment – arguing that they should be granted leave to amend under Rule 15(a) instead. They provided no case law to support their position, contending simply that "justice so require[d]" it. Fed. R. Civ. P. 15(a)(2). Without the benefit of briefing, the Court looked to the language of Rule 15(a) and denied Defendants' request to amend for two reasons. First, by its own terms, Rule 15(a)'s heading provided that it governed "Amendments Before Trial." Accordingly, because Defendants sought amendment *during* trial, the Court concluded that Rule 15(a) did not apply. Second, the Court noted that prior, competent counsel for Defendants made the admissions, and justice did not require amendment simply because current counsel for Defendants disagreed with prior counsel's decision.

### iii. Rule 15(a) Standard and Its Application

The decision of whether to grant or deny a motion for leave to amend under Rule 15(a) rests "within the sound discretion of the district court." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). If the deadline for amendment as a matter of course has passed, Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*.

Despite the Rule 15(a) heading upon which the Court based its ruling during trial, requests for Rule 15(a) amendments are not necessarily limited to matters before trial. In their motion for a new trial, Defendants cite to *Charpentier v. Godsil* which holds that requests for Rule 15(a) amendments are not categorically barred during trial. 937 F.2d 859, 863-64 (3d Cir. 1991) (noting that a "responsive pleading may be amended *at any time by leave of court* to include an affirmative defense") (emphasis added); *see also id.* at 864 ("Consequently, we believe that the district court possessed discretion to permit an amendment of the answer to assert this defense *even after the verdict was returned*.") (emphasis added). And, based on the Court's independent research, it is clear that requests for amendment under Rule 15(a) may be made at various stages of litigation. *See Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) ("Lacking a time limit or an outer bound on when amendment is permissible, the Rule instructs courts to 'freely give leave [to amend] when justice so requires.'"); *see also Newark Branch, NAACP v. Town of Harrison, N.J.*, 907 F.2d 1408, 1417 (3d Cir. 1990) ("Accordingly, courts have held that grants for leave to amend complaints should be routinely granted to plaintiffs, even after judgments of dismissal have been entered against them, if the appropriate standard for leave to amend under Fed. R. Civ. P. 15(a) is satisfied."); *Levin v. Weissman*, 594 F. Supp. 322,

329 (E.D. Pa. 1984), *judgment aff'd*, 760 F.2d 258 (3d Cir. 1985) ("There was discretion to permit plaintiff to amend his complaint immediately after he rested his case. . . ."). In light of *Charpentier*, Defendants now claim that their request for amendment under Rule 15(a) should have been granted.

Nonetheless, leave to amend under Rule 15(a) is not given automatically. Leave may be denied for various reasons, such as when the request for amendment fails to specify "what [the movant's] amendment would have looked like." *Petratos v. Genentech, Inc.*, 855 F.3d 481, 493 (3d Cir. 2017). Additionally, in deciding whether "leave to amend might reasonably be denied," prejudice to the opposing party is considered.[1] *Mullin*, 875 F.3d at 149. "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Id.* (internal quotation marks omitted). Here, two reasons justify denial of Defendants' request.

First, Defendants' cursory request, absent citation to authority or identification of exactly what they wanted to amend in their answer, warranted a denial.[2] It is only in their *post-trial* briefing that Defendants have taken issue with specific admissions and have offered particularized reasons as to why "justice" might require amendment. Because the Motion to Amend failed to tender any proposed amendment or identify "the particular grounds on which amendment [was] sought," denial of the Rule 15(a) motion was proper. *Petratos*, 855 F.3d at 493-94; *see also Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004).

Second, and more significantly, amending admissions made by Defendants' in their answer to Plaintiff's Complaint at the eleventh hour during trial would have unduly prejudiced

---

[1] Other factors included in the Rule 15(a) calculus are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[2] During oral argument, counsel for Defendants contended that one of the admissions – that Plaintiff's complaints "were not taken seriously" – was "gratuitous." Counsel for Defendants argued that parts of the admissions were opinion rather than fact, but did not otherwise explain how their Answer would be amended.

5

Plaintiff. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("[U]ndue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."). Plaintiff's counsel received Defendants' admissions nearly a year before trial began and relied on these admissions in preparing trial strategy. To enact wholesale but unspecified changes to Defendants' factual admissions in the midst of trial – all without any briefing or adequate explanation – would have required Plaintiff's attorney to re-think his trial strategy on the fly thus unduly prejudicing Plaintiff. *See id.*; *see also Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 228 (E.D. Pa. 2012) (noting that undue prejudice under Rule 15(a) may arise when a defendant is "required to defend against new facts or legal theories that require entirely new defenses."). Therefore, denial of Defendants' oral Rule 15(a) request was proper.

> *iv. Defendants Still Fail to Satisfy the Rule 59 Standard*

Even assuming that Defendants had been allowed to amend their pleadings, they have not, in any event, satisfied the Rule 59 standard for a new trial: Defendants have not shown that, had the pleadings been amended, the "great weight" of the evidence "cuts against the verdict" and a "miscarriage of justice would result if the verdict were to stand." *Springer*, 435 F.3d at 274; *see also Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991) ("Nevertheless, new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.").

Defendants' argument overlooks the substantial amount of evidence adduced during a four-day trial that supported the jury's verdict. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 309 n.18 (3d Cir. 2007) (new trial based on verdict being against the weight of the evidence is "extraordinary relief."). The evidentiary record is saturated with instances of a hostile work

6

environment under Title VII and the PHRA. The following events – all after Plaintiff had unequivocally rebuffed Acord's advances – list only some of the evidence introduced at trial:

- Around November 2014, Acord created a Facebook account, using as his background a vacation photograph that featured Plaintiff in a bikini on the beach.

- After learning on Facebook that Plaintiff began dating another individual, Acord sent Plaintiff text messages to express his hope that they could resume dating.

- In one of these messages, Acord asked Plaintiff that she "allow [him] [his] delusions" that they were still dating.

- Around December 2014, Plaintiff requested that Acord stop sending text messages, to which he initially agreed.

- However, two weeks later, Acord sent additional text messages to Plaintiff, including pictures that he took while they were dating.

- At one point around February 2015, Acord sent Plaintiff fourteen consecutive messages.

- Acord persisted in sending Plaintiff text messages through the end of February 2015.

- By March 2015, Plaintiff blocked Acord's number.

- Acord's advances were not limited to online communications, as he constantly asked Plaintiff to resume dating him at work.

- On one occasion, after Plaintiff exited the locker room at work, Acord asked her to talk with him about the prospect of dating again.

- Acord left various gifts in Plaintiff's work mailbox, such as candy and a box of Pop-Tarts.

- Plaintiff testified that fellow troopers were aware of Acord's conduct.

- In May 2015, while Plaintiff was alone in the patrol room to check her email, Acord sat close to her.

- Plaintiff testified that, as Acord sat beside her, he said, "You'll always be my wheat. You'll always be my wheat. You'll always be my wheat." "Wheat" was Acord's pet name for Plaintiff when they were dating.

- As Acord was prepared to leave the patrol room, he kissed the back of Plaintiff's neck.

7

- Although Plaintiff did not inform anybody about the details of the incident, she told Corporal Rai, one of her supervisors, that "stuff was still going on" with Acord.

- After the kissing incident, Acord left on vacation for three weeks. Upon his return, he informed Plaintiff that he purchased her a gift.

- On the very next day, as Plaintiff was leaning over in the patrol room to view her work schedule, Acord took a picture of himself with Plaintiff in the background.

- The picture featured Plaintiff bent over the table.

- As a result of the picture, Plaintiff contacted Corporal Rai, crying on the phone and informing him of Acord's picture.

- Plaintiff testified that Corporal Rai was "pretty familiar with what had been happening previously" with Acord's unconsented-to advances.

- Discussing the PSP's policy on sexual harassment, Plaintiff testified to, *inter alia*, an administrative regulation called "AR-426."

- AR-426 articulated a zero tolerance policy of sexual harassment, providing that its purpose was to "provide policies and procedures for preventing, reporting, investigating and resolving incidents of discrimination, discriminatory harassment, sexual impropriety and retaliation involving department personnel in accordance with Commonwealth policy and federal and state law governing equal employment opportunity."

- In response to Plaintiff's report of sexual harassment, a lieutenant, who served as the Equal Employment Opportunity ("EEO") Liaison, testified that the PSP conducted an "inquiry" rather than an "investigation" into Acord's conduct.

- However, under the applicable administrative regulation, an "inquiry" was a less formal procedure than an investigation whereby an EEO officer determines whether harassment occurred.

- On cross-examination, the lieutenant could not explain why the PSP opted for an inquiry, as opposed to an investigation, when Plaintiff reported unwanted physical contact between her and Acord.

- Upon conclusion of the sexual harassment inquiry, the PSP issued a "supervisory notation" to Acord, which prohibited "unnecessary" contact between Plaintiff and Acord in the workplace.

- On cross-examination, the lieutenant conceded that the supervisory notation did not categorically prohibit all forms of contact at work between Plaintiff and Acord.

8

Given these facts and others presented at trial, Defendants have not shown that the "great weight" of the evidence is contrary to the verdict. *Springer*, 435 F.3d at 274. Therefore, their motion for a new trial will not be granted.

### b. "Tangible Employment Action" Jury Instruction

Defendants' second argument in support of their motion for a new trial is that the jury instructions on hostile work environments under Title VII confused and misled the jury. During the charging conference, Defendants challenged the propriety of reading both the "tangible employment action" and "no tangible employment action" instructions to the jury. Whereas Plaintiff asserted that the loss of overtime hours due to her avoidance of Acord during a security detail was a "tangible employment action," Defendants argued that such a loss could not be a "tangible employment action" as a matter of law. The Court ultimately read both instructions (Third Circuit Model Civil Jury Instruction 5.1.4 (Elements of a Title VII Action – Harassment – Hostile Work Environment – Tangible Employment Action) [3] to the jury citing *Moody v. Atl.*

---

[3] As tailored to the parties in this case, the tangible employment jury instruction read by the Court was as follows:

> Plaintiff Rachel Jones claims that she was subjected to harassment by Craig Acord and that this harassment was motivated by her sex. Pennsylvania State Police is liable for the actions of Jones' claim of harassment, if Jones proves all of the following elements by a preponderance of the evidence:
>
> First, Jones was subjected to sex harassment by Acord.
>
> Second, Acord's conduct was not welcomed by Jones.
>
> Third, Acord's conduct was motivated by the fact that Jones is a woman.
>
> Fourth, the conduct was so severe or pervasive that a reasonable person in Jones's position would find Jones's work environment to be hostile or abusive. This element requires you to look at the evidence from the point of a view of a reasonable woman's reaction to Jones's work environment.
>
> Fifth, Jones believed her work environment to be hostile or abusive as a result of Acord's conduct.
>
> Sixth, Jones suffered an adverse tangible employment action as a result of the hostile work environment. A tangible employment action is defined as a different change in her employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in benefits.

9

*City Bd. of Educ.*, as its rationale for including the "tangible employment action" jury instruction. 80 F.3d 206 (3d Cir. 2017).

"Under Rule 59(a), a District Court has the discretion to grant a new trial on claims of . . . erroneous jury instructions when it finds that those errors are substantial." *Murray v. Ennis*, 523 F. App'x 901, 902 (3d Cir. 2013). "While jury instructions must 'fairly and adequately submit[] the issues in the case to the jury,' a trial judge has broad discretion concerning the particular language used in a jury instruction." *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1124 (3d Cir. 1992). Here, there was no error because whether Plaintiff suffered a "tangible employment action" was ultimately a jury question. *Moody*, 80 F.3d at 219-20. More specifically, Plaintiff testified to her loss of overtime pay on a specific police assignment due to her fear that Acord may have been on the same assignment and failure of her supervisors to schedule around her concerns. Pursuant to *Moody*, this is "direct economic harm" that the jury could find to be a type of "tangible employment action." *Id.* at 217 (*quoting Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) ( "A reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action.")).

Given that it was the jury's role to decide whether Plaintiff suffered a "tangible employment action," Defendants' contention that the loss of overtime pay cannot be a "tangible employment action" is unavailing and the inclusion of the "tangible employment action"

---

> Seventh, management level employees knew or should have known of the abusive conduct. Management level employees should have known of the abusive conduct if (1) an employee provided management level personnel with enough information to raise a probability of sex harassment in the mind of a reasonable employer or if (2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

instruction was a fair and adequate submission of the issues to the jury.[4] *See Tigg Corp.*, 962 F.2d at 1124.

### c. Remittitur

In the alternative to a request for a new trial, Defendants move for remittitur, seeking a reduction in the jury award of $250,000 because Plaintiff's damages are purportedly excessive. The use of "remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010). "There must be a rational relationship between the specific injury sustained and the amount awarded." *Gumbs v. Pueblo Intern., Inc.*, 823 F.2d 768, 773 (3d Cir. 1987). "While a district court has discretion in determining whether a jury's verdict is excessive, it is undisputed that the court *may not* vacate or reduce the award merely because it would have granted a lesser amount of damages." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989).

As to what forms of injury may be considered in determining the amount of the award, both Title VII and the PHRA contemplate damages for emotional distress. *See* 42 U.S.C. § 1981a(b)(3); *Durko v. OI-NEG TV Products*, 870 F. Supp. 1278, 1284 (M.D. Pa. 1994) ("Damages for emotional distress are available to compensate victims of violations of the PHRA."); *see also Moussa v. Pa. Dep't of Public Welfare*, 289 F. Supp. 2d 639, 665 (W.D. Pa.

---

[4] Even if submission of the jury instruction was erroneous, "any error was harmless because it is highly probable that the error did not contribute to the judgment." *City Select Auto Sales v. David Randall Assocs., Inc.*, 885 F.3d 154, 163 n.5 (3d Cir. 2018) (internal quotation marks omitted). Defendants contend that the "tangible employment action" jury instruction was problematic because it precluded the jury's consideration of the *Ellerth* affirmative defense to Plaintiff's hostile work environment claim. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, the Joint Verdict Form agreed to by both parties and used by the jury included the *Ellerth* affirmative defense. The Joint Verdict Form furthermore did not distinguish the *Ellerth* affirmative defense's applicability to "tangible employment action" and "no tangible employment action" claims. Thus, inclusion of the "tangible employment action" instruction did not prejudice Defendants.

11

2003) ("[C]ourts have held that intangible injuries such as sleeplessness, headaches, and feelings of humiliation and embarrassment are sufficient to support an award of compensatory damages.").[5]

Here, the evidence supports the jury's general damages award and does not "shock the judicial conscience." *Cortez*, 617 F.3d at 718; *see also Motter*, 883 F.2d at 1230. Plaintiff testified to the mental anguish that she suffered as a result of Acord's harassment spanning about a year. For example, Plaintiff cried "hysterically" for hours while discussing Acord's harassment with her mother. Detailing her appointments with a mental health counselor, Plaintiff explained that she felt anxious and "sick to [her] stomach" when going to work. At trial, one co-worker stated that Plaintiff "became introverted" and "cowered a lot" during the relevant time period. Indeed, Plaintiff was especially fearful for her safety because, as she noted, Acord was a six foot four male who carried a gun. Outside of the workplace, Plaintiff stated that she felt depressed as a result of Acord's harassment. Plaintiff also worried that Acord's harassment and her report of it would jeopardize her PSP career – a career that she spent developing over the course of three years. The extraordinary circumstances surrounding Plaintiff's case – especially the psychological harm she suffered – merit the jury's award of $250,000.

---

[5] As to compensatory damages under Title VII, the jury heard the following instruction, taken directly from the Third Circuit Model Civil Jury Instruction 5.4.1:

> You may not award damages based on sympathy, speculation or guesswork. You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Jones experienced as a consequence of Pennsylvania State Police and Tinney's omission. No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence. There's no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

The Court "is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion," and concludes that the $250,000 award was appropriate. *Spence*, 806 F.2d at 1201. Defendants' request for remittitur shall therefore be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

**Date: May 11, 2018**